UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEREMIAH HILL | CIVIL ACTION |
| VERSUS | NO: 24-994 |
| JACKSON OFFSHORE HOLDINGS, LLC, ET AL. | SECTION: "A" (5) |

### ORDER AND REASONS

The following motion is before the Court: **Motion to Compel Arbitration and to Stay (Rec. Doc. 9)** filed by the defendants, Jackson Offshore Holdings, LLC and Jackson Offshore Operators, LLC (collectively and in the singular "Jackson Offshore"). The plaintiff, Jeremiah Hill, opposes the motion. The motion, submitted for consideration on July 24, 2024, is before the Court on the briefs without oral argument.[1]

**I.      Background**

On April 4, 2023, the plaintiff, Jeremiah Hill, sustained serious, permanent, and life-threatening injuries while working aboard the M/V BLIZZARD, a vessel owned and operated by Jackson Offshore. Hill was a Jones Act seaman employed by Jackson Offshore. Hill's injuries required hospitalization for a month, numerous surgeries, and convalescence in an in-patient rehabilitation facility where Hill remained for an additional month after he left the hospital.

It is undisputed that Jackson Offshore initiated maintenance and cure benefits, as

---

[1] Mr. Hill has requested oral argument but the Court is not persuaded that oral argument would be helpful at this time.

it was legally required to do. It is also undisputed that Jackson Offshore paid maintenance benefits that exceeded the minimum of what maritime law legally obligated it to do. Jackson Offshore characterizes these extra benefits as "gratuitous," which is a specious characterization, because on October 3, 2023, while Hill was still convalescing from his injuries, Jackson Offshore convinced Hill to execute a document in which Hill agreed to submit any future claims (Jones Act, general maritime law, or otherwise) against the company for his injuries or illness to binding arbitration before the Society of Maritime Arbitrators in exchange for continuing to receive those "gratuitous" benefits.[2] And especially pertinent to the instant motion, Jackson Offshore included a "delegation clause" in the agreement such that Hill agreed to submit to arbitration any disputes relating to the validity of the agreement.

Jackson Offshore also included a provision to ensure that it would receive credit against any settlement, arbitration, award, or judgment for any benefits paid to Hill. Jackson Offshore even drafted the agreement so that it would not be obligated to pay the entirety of the costs for any future arbitration.[3] (Rec. Doc. 1-4, Exhibit A). Hill executed this document without the advice of an attorney, who undoubtedly would have

---

[2] The one-page document is captioned "Advanced Wage and Benefits Agreement" but its singular purpose is to ensure that any legal action against Jackson Offshore related to the April 4, 2023 incident would be submitted to arbitration. According to Hill, the Society of Maritime Arbitrators is a professional group whose panel of arbitrators consists almost entirely of maritime and insurance industry claims professionals associated with maritime companies and their insurers. (Rec. Doc. 10, Opposition at 13-14).

[3] The agreement obligates Jackson Offshore only to "advance" the costs of arbitration subject to subsequent allocation.

counseled him against signing such a document since Hill was agreeing to waive the legal rights enjoyed only by Jones Act seamen, a class of persons historically protected by both Congress and the courts.[4]

To be sure, after the incident Lee Jackson, the Chief Executive Officer for Jackson Offshore Operators, LLC, saw to it that Hill was treated well. Jackson Offshore had continued to pay Hill's net wages and also rented Hill a furnished apartment in Harvey, Louisiana given that Hill did not have a permanent residence of his own.[5]  Lee Jackson visited Hill nearly daily during his time in the hospital and recovery period, when he would remind Hill that Jackson Offshore was taking care of his medical expenses and would provide ongoing financial support. (Rec. Doc. 10-2, Hill Affidavit ¶¶ 14, 15). Hill claims that Lee Jackson <u>repeatedly</u> told him that if he were to retain an attorney then the company's assistance would end and that he would be "cut off." (*Id.* ¶¶ 16 & 26 & 33 & 35 & 57). Hill states that given his injuries, lengthy recovery time, lack of mobility and having no permanent residence of his own, he was completely dependent on the company's financial assistance. (*Id.* ¶ 27).

While Jackson Offshore goes to great lengths to cast Lee Jackson's treatment of Hill following the accident as a manifestation of generosity and altruism, the events surrounding the execution of the arbitration agreement on October 3, 2023 are troubling

---

[4] In fact, in the Federal Arbitration Act Congress specifically exempted "contracts of employment of seamen" from its scope. 9 U.S.C. § 1.

[5] Because of his work schedule offshore, Hill would travel and stay at hotels or visit friends during his off-time. (Affidavit ¶¶ 20, 21).

to say the least. According to Hill, Lee Jackson and Jay Harkness, the executive vice-president and Chief Financial Officer for Jackson Offshore, made an unannounced visit to Hill's company-provided apartment to present him with the Advanced Wage and Benefits Agreement ("the Agreement") for his signature. Hill states that he was not provided the document in advance and was not given the opportunity to review it alone or to consult with an attorney about it. (Affidavit ¶ 38). Hill states that no one had explained to him before signing the document what the terms "maintenance" and "cure" meant or that Jackson was obligated by law to pay for all medical expenses and a daily stipend (maintenance) and therefore could not "cut off" that assistance. (*Id.* ¶ 40 & 41). Hill states that when he attempted to ask questions about what "arbitration" meant or "the Society of Maritime Arbitrators," Lee Jackson would just read from the Agreement itself, (*id.* ¶ 44), and that the only explanation that Hill received was that if he retained an attorney the company would be forced to end its assistance, (*id.* ¶ 45). Attached to the Agreement is a sheet of statements that Hill agreed to including the assertion that he had been given the opportunity to consult with an attorney of his choosing before signing the Agreement. (Rec. Doc. 9-6 ¶ D). Hill states that he questioned this statement specifically given that Lee Jackson had repeatedly told him that if he retained a lawyer then Jackson Offshore's financial assistance would end. But because Hill was completely dependent on Jackson Offshore for financial assistance, he knew that if he did not sign the Agreement and the company stopped his financial assistance then he would not be able to afford rent and would be homeless. (*Id.* ¶¶ 51 & 52). Hill felt that he had no choice but to sign the Agreement, (*id.* ¶ 54), but states that had he been allowed

to consult with an attorney and based on what he now understands regarding his rights as a seaman, he would never have signed the Agreement, (*id.* ¶ 58).

Obviously, Hill did retain counsel at a later date, who then filed this lawsuit on Hill's behalf seeking to recover under the Jones Act and general maritime law for the injuries sustained on April 4, 2023, and seeking to avoid arbitration by having the Agreement declared null and void. The lawsuit was met with the instant motion to stay and to compel Hill to submit his claims against Jackson Offshore to arbitration in accordance with the terms of the Agreement.

Hill seeks to avoid arbitration and to proceed with his claims against Jackson Offshore in this Court because he contends that he executed the Agreement while under economic duress and based on fraudulent statements made to him by Lee Jackson. If the Court cannot relieve Hill of the arbitration agreement on the current record, then Hill asks the Court to order an evidentiary hearing so that evidence can be presented.

Jackson Offshore's position is that this Court cannot as a matter of law delve into the issues of fraud and duress that Hill now raises to resist arbitration but rather must immediately stay this lawsuit and refer the matter to arbitration. This contention is based on the "delegation clause" that Jackson Offshore included in the Agreement that it convinced Hill to sign, and what Jackson Offshore contends is binding law that not only supports its position but compels the relief that it seeks.

The parties' competing contentions are addressed below.

## II. Discussion

Jackson Offshore included a "delegation clause" in the Agreement such that Hill agreed to submit any disputes relating to the validity of the Agreement to arbitration. The question before the Court today is who will decide—the Court or the arbitrator(s)—whether the Agreement is the product of fraud, coercion, and duress.

The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Given that arbitration agreements are simply contracts, "'[t]he first principle that underscores all [] arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'" *Id.* (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019)). Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). If a court is "satisfied that the making of the agreement for arbitration . . . is not in issue," it must send the dispute to an arbitrator. *Id.* (quoting 9 U.S.C. § 4).

Because an arbitration provision is severable from the remainder of the contract in which it is contained, "the severability principle" recognizes that any issues of the contract's validity are decided by the arbitrator in the first instance. *Coinbase*, 144 S. Ct. at 1194 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)). But when a party seeking to avoid arbitration challenges not just the contract as a whole but rather directly challenges the arbitration or delegation clause contained in the contract, a court (not the arbitrator) must address that challenge. *Id.* (citing *Rent-A-*

*Center*, 561 U.S. at 71). Basic principles of contract and consent require that result because normally if a party says that a contract is invalid—and arbitration and delegation agreements are simply contracts—the federal court must address the challenge before ordering compliance with the arbitration agreement. *Id.*

Relying on the Supreme Court's *Rent-A-Center* decision, Jackson Offshore contends that the Agreement's delegation clause must be enforced and the question of whether the arbitration agreement was the product of fraud, coercion, and duress must be referred to arbitration because Hill is challenging the Advanced Wage and Benefits Agreement as a whole rather than the delegation clause itself.

In *Rent-A-Center* the plaintiff sought to avoid arbitrating a discrimination claim against his former employer by arguing that the arbitration agreement that he had signed was unconscionable and should be voided on that basis. 561 U.S. at 65-66. That plaintiff mounted a challenge to the agreement to arbitrate as a whole and made no challenge whatsoever to the delegation provision of the arbitration agreement. The Supreme Court applied the severability principle and held that a delegation provision is severable from both an arbitration agreement and the contract as a whole. *Id.* at 72. Therefore, absent a challenge directed specifically at the delegation provision, it was subject to enforcement which meant that the arbitrator must decide whether the agreement was unconscionable under state law. *Id.* It mattered not that the totality of the underlying contract itself was an arbitration agreement—the severability principle applied nonetheless. *Id.*

Jackson Offshore points out that the allegations of Hill's complaint refer only to

the Agreement as a whole, which demonstrates that Hill is not challenging the delegation clause specifically, it therefore must be enforced, and the question of whether Hill's consent to arbitration was vitiated by fraud and/or duress must be decided by the arbitrator.

Although Jackson Offshore's point regarding the allegations in Hill's complaint is well taken, the Court is not persuaded that Hill has challenged only the Agreement as a whole without also challenging the delegation clause. In the opposition memorandum Hill's counsel expounded upon the nature of the challenge that Hill is bringing and the Court is persuaded that it does include the Agreement's delegation clause. The Supreme Court recently clarified that the severability principle does not require that a party challenge *only* the arbitration clause or delegation provision *Coinbase*, 144 S. Ct. at 1194. Rather, where a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that challenge. *Id.* (citing *Rent-A-Center*, 561 U.S. at 71). That is exactly the case here.

The Court accepts Hill's factual allegations, as expounded upon by his affidavit, as true.[6] Hill's version of events certainly renders it plausible that vices recognized by Louisiana law, *i.e.*, fraud and duress, vitiated his consent to the delegation provision of the Agreement, and potentially the arbitration clause itself. La. Civ. Code art. 1948. The Court cannot refer this matter to arbitration for resolution of the underlying dispute, *i.e.*,

---

[6] Neither Lee Jackson nor Jay Harkness have submitted affidavits or declarations of their own to refute or traverse Hill's version of events.

the Jones Act and maritime law claims, until the Court determines that the parties have a valid and enforceable agreement to arbitrate, an issue that this Court must decide. Of course, at this juncture the Court is not "adequately apprised of the facts and circumstances" surrounding the execution of the Agreement and the agreement to arbitrate, *see Garza Nunez v. Weeks Marine, Inc.*, No. 06-3777, 2007 WL 496855 (E.D. La. Feb. 13, 2007) (Fallon, J.), especially the facts and circumstances according to Lee Jackson and Jay Harkness. Their testimony could possibly differ significantly from Hill's version of events in which case live testimony may be necessary so that the Court can make a credibility determination.

In sum, Hill may or may not be bound by a valid and enforceable agreement to arbitrate his claims against Jackson Offshore. Hill will bear the burden of establishing that a vice vitiated his consent to the arbitration agreement that he executed. The Court will allow discovery limited to the issue of the enforceability of the arbitration agreement, after which Jackson Offshore may move anew to have Hill's claims referred to arbitration.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Compel Arbitration and to Stay (Rec. Doc. 9)** filed by the defendants, Jackson Offshore Holdings, LLC and Jackson Offshore Operators, LLC, is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that counsel for the parties shall confer for the purpose of identifying deposition dates for Hill, Lee Jackson, and Jay Harkness. Unless the parties agree otherwise, these depositions will be specific to the issue of whether

the parties have a valid and enforceable agreement to arbitrate and not to the merits of the underlying injury claim. Counsel must communicate the agreed-to deposition dates to the Court in writing by **August 27, 2024**, after which the Court will issue further orders.[7]

August 14, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[7] If credibility is not an issue, then the evidentiary hearing that Hill seeks may take place on the briefs. Until the depositions of Hill, Lee Jackson, and Jay Harkness take place, it is not possible to know whether a live evidentiary hearing will be required.